IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JEFFREY STONE,

                Plaintiff,                OPINION AND ORDER

v.

                                              19-cv-435-wmc

ANDREW SAUL, Commissioner
of Social Security,

                Defendant.

Claiming disability beginning on March 30, 2015, plaintiff Jeffrey Scott Stone filed a protective application for a period of disability, disability insurance benefits, and supplemental security income. His application was denied initially and on reconsideration, after which he requested a hearing. On March 7, 2018, Administrative Law Judge ("ALJ") Virginia Kuhn held a video hearing at which Stone, Stone's counsel, impartial medical expert Michael A. Lace, and impartial vocational expert ("VE") Kimberly E. Eisenhunth appeared. (AR at 14.) She then issued a partially favorable decision to Stone, finding that he became disabled on May 21, 2018, but was not disabled before that date. Plaintiff now appeals the latter portion of that decision under 42 U.S.C. § 405(g), arguing that the ALJ failed to follow Social Security Rule 96-8p in considering the effect of Stone's mental impairments on his ability to work. For the reasons that follow, the court will affirm the Commissioner's decision.

BACKGROUND

Stone alleged in his application that he was limited in his ability to work due to degenerative disc disease, bicuspid aortic valve, obesity, anxiety, and depression. (AR at

301.)  Stone's medical record reveals a history of chronic back pain dating to at least 2013. Between 2013 and the time of the hearing, Stone underwent numerous courses of treatment with varied degrees of success, leaving him with functional limitations on his exertional abilities.  The medical record also indicates a BMI of 36.33, placing Stone in the obese category, as well as a historical diagnosis of biscuspid aortic valve but otherwise stable cardiovascular status.

As for Stone's mental health records, Stone's treatment providers began to note mental health issues or limitations beginning in 2015 (*see* AR at 39, 430-36, 446-49, 425-28, 513-19), except for a note in June of 2013 that suggested Stone had a history of depression "in remission" but otherwise found Stone was able to participate intelligently in shaping his care (AR at 445).  Between May 2015 through January 2016, Stone began attending counseling with LPC John Sopiwnik.  (AR at 644-56, 786-97.)  Dr. Sopiwnik's records show major depression and varied mood, although nearly every one of his numerous treatment notes state that Stone's "functionality [was] not impaired."  (AR at 644-56, 786-97.)

In September of 2015, state agency psychologist Ellen Rozenfeld also concluded based on a paper review of the record that Stone had mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning and maintaining concentration, persistence or pace ("CPP"), and no repeated episodes of decompensation. (AR at 107.)  Similarly, in March of 2016, state agency psychologist Therese Harris concluded that Stone had mild restrictions of activities of daily living and difficulties in maintaining social functioning; moderate difficulties in maintaining CPP, and no repeated

episodes of decompensation. (AR at 139-40.)

Also, in March of 2016, Stone underwent a consultative examination with Dr. Marcus Desmonde, who diagnosed Stone with unspecified depressive disorder. (AR at 810.) Dr. Desmonde concluded that Stone had no significant social limitations, and was "capable of understanding simple to moderately complex instruction" but "may have difficulty carrying out tasks with reasonable persistence and pace." (AR at 810.) Finally, at a May 2018 hearing, impartial medical expert Dr. Lace opined that Stone had no limitations in the his ability to manage himself and had no more than mild limitations in terms of understanding, remembering or applying information, interacting with others, and CPP (AR at 77-79) and the VE testified that based on the residual functional capacity ("RFC") formulated by the ALJ, Stone was employable prior to March 21, 2018 (the date he changed age categories).

In her written decision, ALJ Kuhn performed the standard five-step analysis to determine whether Stone was disabled. *See* 20 C.F.R. § 404.1520. The ALJ first found that Stone met the insured status requirements and had not engaged in substantial gainful activity since the alleged onset date. (AR at 16-17.) Second, the ALJ concluded that Stone's obesity, degenerative disc disease of the spine, and bicuspid aortic valve disease amounted to severe impairments under the regulations. (AR at 17-20.) In arriving at this finding, the ALJ also considered the medical severity of Stone's mental impairments. (AR at 17-20.) Ultimately, ALJ Kuhn found that Stone had no limitations in interacting with others and only mild limitations in understanding, remembering or applying information, concentrating, persisting or maintaining pace, and adapting or managing oneself. (AR at

3

17-20.)  In arriving at this conclusion, the ALJ considered various records, including those from Dr. Sopiwnik's counseling treatment between May of 2015 and January of 2016, the state agency consultants' findings in September 2015 and March 2016, Dr. Desmonde's examination in March 2016, and Dr. Lace's testimony at the May 2018 hearing -- ultimately giving greater weight to Dr. Lace's opinions.  (AR at 17-20.)

At step three, the ALJ concluded that Stone's limitations did not amount to a listing level impairment.  (AR at 20.)  Thus, continuing to step four to consider Stone's RFC, ALJ Kuhn found that Stone could perform light work with certain physical limitations, but found no mental limitations.  (AR at 21-25.)  At step five, the ALJ concluded that prior to May 21, 2018, jobs existed in significant numbers in the national economy that Stone could have performed, such as mail clerk or inspector/hand packager.  (AR at 26-27.)  Finally, after March 21, 2018, the date Stone's age category changed, the ALJ concluded that the Stone was disabled under the meaning of the Social Security Act.  (AR at 27.)

OPINION

The standard by which a federal court reviews a final decision by the Commissioner of Social Security is well settled.  Findings of fact are "conclusive," so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ.  *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting

evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993).

At the same time, the court must conduct a "critical review of the evidence" before affirming the Commissioner's decision. *Edwards*, 985 F.2d at 336. If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, then the court must remand the matter. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Indeed, even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th 2006). To build this bridge, "the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger*, 516 F.3d at 544.

Under the regulations, at step two of the functional analysis, an ALJ is to engage in a "special technique" to consider the severity of a claimant's mental impairments. *See Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008) (citing 20 C.F.R. § 404.1520a). This technique requires the ALJ to evaluate a claimant's symptoms to determine whether he or she has a medically determinable mental impairment, and if so, to document that finding and rate the degree of functional limitation. *Id.* Where a claimant's mental limitations are rated as "none" or "mild," an ALJ will generally conclude that his or her impairment or impairments are not severe. *See* 20 C.F.R. § 404.1520a(d)(1). A "mild" limitation means that the claimant's functioning "independently, appropriately, effectively, and on a

5

sustained basis is slightly limited." 20 C.F.R. Part 404, Subpt. P, App'x 1, § 12.00F(2)(b). Even where no "severe" mental impairment is found at step two, however, the ALJ must account for any mental impairment in the claimant's RFC that imposes a limitation on his or her ability to work. SSR 96-8p.

Here, the ALJ engaged in a thorough discussion of the medical records related to Stone's mental health at step two of the five step analysis. (*See* AR at 17-20.) Following the "special technique," ALJ Kuhn further found that Stone had no limitations in interacting with others and only mild limitations in understanding, remembering or applying information, CPP, and adapting or managing oneself. (AR at 17-20.) Plaintiff does not contend that ALJ Kuhn's step two finding is deficient, but rather argues that the ALJ should have incorporated the mild limitations found at step two into Stone's RFC, citing to Social Security Rule 96-8p requirement that an ALJ "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" (Pl.'s Br. (dkt. #9) 4-5.)

In fairness to plaintiff, the ALJ did largely fail to discuss Stone's mental health records at step four, although she noted the multiple, stable neurological findings related to Stone's back pain treatment. (*See* AR at 17-25.) Nevertheless, the ALJ did not fail to consider the evidence related to Stone's mental limitations, having done so in detail in her step two analysis. Moreover, the regulations only require an ALJ to incorporate a non-severe mental impairment into an RFC where such impairments impose a functional limitation. *See* SSR 96-8p; 20 C.F.R. § 404.1545(a) (defining RFC as a claimant's impairment(s) "that affect what [the claimant] can do in a work setting"). Here, plaintiff

6

has failed to explain how or even if Stone's mental impairments impose any functional limitations. *See Davis v. Berryhill*, 723 F. App'x 351, 356 (7th Cir. 2018) (plaintiff who argued that ALJ should have considered her fibromyalgia symptoms but failed to identify what additional limitations should have been included the RFC did not identify a reversible error); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (claimant bears burden of proof in establishing claimant's limitations at step four); *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("It is unclear what kinds of work restrictions might address Jozefyk's limitations . . . because he hypothesizes none."). And as this court has recently explained, there is no "*per se* rule that *any* mild limitation found at step two must be incorporated into the claimant's RFC; rather, each limitation should be considered in the context of the overall opinion." *Buss v. Saul*, No. 18-CV-565-WMC, 2019 WL 5616948, at *5 (W.D. Wis. Oct. 31, 2019) (emphasis in original).

To the contrary, the underlying medical records show that the ALJ's decision *not* to include mental limitations in the claimant's RFC is supported by substantial evidence in the record. In particular, Dr. Sopiwnik's treatment notes from May 2015 through January 2016 consistently show that Stone's functionality was not impaired despite his suffering from depression. (AR at 644-56, 786-97.) Moreover, Dr. Lace concluded that Stone suffered from no more than mild mental limitations. As noted above, a mild limitation means that the claimant's functioning "independently, appropriately, effectively, and on a sustained basis is *slightly* limited." 20 C.F.R. Part 404, Subpt. P, App'x 1, § 12.00F(2)(b) (emphasis added). Dr. Lace's findings of slight limitations supports the ALJ's conclusion not to require additional RFC limitations. *See Brimblecom v. Saul*, No. 18-CV-257-WMC,

7

2019 WL 3059902, at *3 (W.D. Wis. July 12, 2019) ("[N]one of the three recognized mild restrictions required additional RFC limitations.").

Ultimately, plaintiff cites to a single case to support his argument, *Kasarksy v. Barnhart*, 335 F.3d 539 (7th Cir. 2003), which is readily distinguishable. In *Karsarksy*, the Seventh Circuit found that the ALJ's discussion of the claimant's RFC was deficient because he did not incorporate his own earlier finding that the claimant suffered from "*frequent* deficiencies of concentration, persistence, or pace." *Kasarksy*, 335 F.3d at 543, 544 (emphasis in original). The court reasoned that "[e]mployers are entitled to demand that their employees stick with the job, once they have been trained to do it." *Id.* Here, all of Stone's mental limitations were found to be, at most, "mild," and none of the ALJ's discussion of those limitations, including CPP, elicit the same concerns raised by the Seventh Circuit in *Kasarksy*.

Finally, even *if* the ALJ erred by failing to incorporate one or more of Stone's mental limitations into his RFC, this court "will not remand a case to the ALJ for further consideration if [it] can predict with great confidence that the result on remand would be the same." *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Here, the available jobs identified by the vocational expert included mail clerk and inspector/hand packager. Plaintiff does not attempt to argue that Stone's mild mental limitations would have prohibited him from performing these jobs, and the *Dictionary of Occupational Titles* descriptions of the mail clerk and inspector/hand packager jobs do not suggest that they would preclude individuals who suffer from only mild mental limitations. *See Dictionary of Occupational Titles* 209.687-026; 559-687-074. Therefore, even if the ALJ should have

8

incorporated some mild mental limitations into his RFC, plaintiff has not shown that the result on remand would be any different. *See Brimblecom*, No. 18-CV-257-WMC, 2019 WL 3059902, at *3 (finding no reversible error where, in part, the plaintiff failed to show that, even accepting plaintiff's alleged mental limitations, the available positions identified by the vocational expert would be further limited upon remand).

ORDER

Accordingly, IT IS ORDERED that the decision of defendant Andrew Saul, Commissioner of Social Security, denying in part plaintiff Jeffrey Stone's application for a period of disability, disability insurance benefits, and supplemental security income is AFFIRMED.

Entered this 2nd day of July, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge